## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF MICHIGAN

DONALD SAMUELS,
an individual,

        Plaintiff,                        Case No.
                                                Hon.

vs.

FORD MOTOR COMPANY,
a foreign corporation, and
MELISSA BOGEMA, an individual,

        Defendants.
_____/

## **<u>COMPLAINT</u>**

    Plaintiff, DONALD SAMUELS, by and through his attorneys, DILLON &

DILLON, P.L.C., hereby makes the following Complaint:

## **JURISDICTION**

    1.    Plaintiff DONALD SAMUELS ("Plaintiff" or "SAMUELS") was, at

all times relevant to this Complaint, a resident of the County of Wayne, State of

Michigan.

    2.    Defendant FORD MOTOR COMPANY ("Defendant Company" or

"FORD") is a Delaware corporation with its world headquarters located in the city

of Dearborn, Wayne County, Michigan.

    3.    Defendant MELISSA BOGEMA ("Defendant BOGEMA") was, at all

times relevant to this Complaint, a resident of the County of Wayne, State of Michigan.

4.      At all times relevant to this Complaint, Plaintiff worked in the skilled trades classification of Carpenter at FORD'S Rouge Site in the city of Dearborn, Wayne County, Michigan.

5.      Defendant BOGEMA was, at all times relevant to this Complaint, the Ford Rouge Site Coordination Manager, and the individual employed by FORD with supervisory authority over Plaintiff, including the authority to evaluate, promote, transfer, demote and/or otherwise discipline Plaintiff.

6.      The amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000) exclusive of interest and costs.

7.      This Court has jurisdiction of the federal claims asserted herein pursuant to 28 USC 1331. This Court has supplemental jurisdiction over the claims arising under the law of the State of Michigan pursuant to 28 USC 1367 and the principles of pendent jurisdiction.

8.      The unlawful employment practices complained of in this complaint occurred within the Eastern District of Michigan, and venue is proper within this District and Division pursuant to 28 U.S.C. 1391(a).

## GENERAL ALLEGATIONS

9.      At this time, FORD has approximately 186,000 employees

2

worldwide, approximately 48,000 of which are in Michigan. FORD is number 21 on the Fortune 500 list of companies and has over $125 billion in annual revenues.

10.     Plaintiff is an African American.

11.     Plaintiff began working for FORD in 1994 and subsequently became a skilled tradesman working in the classification of Carpenter.

12.     In 2003, while working as a skilled trades Carpenter, Plaintiff suffered a workplace injury.

13.     In 2005, Plaintiff was assigned to office-based work, apparently initially as an accommodation of Plaintiff's actual and/or perceived disability(ies).

14.     Generally, Plaintiff continued to work a regular, 40 hour work week in this office-based role from 2005 through January 10, 2020.

15.     At all times from 2005 through January 10, 2020, Plaintiff performed his office-based duties in a satisfactory manner.

16.     From 2005 through January 10, 2020, from time to time during the regular, 40 hour work week, and also regularly on the weekends, Plaintiff would be assigned to work shifts *out of the office*, and in the normal role of a skilled trades Carpenter.

17.     During the period from 2005 through January 10, 2020, Plaintiff regularly worked 10 hour shifts as a regular skilled trades Carpenter and not in an office-based role.

18.     During the period from 2005 through January 10, 2020, Plaintiff routinely logged 60 and 70 hour work weeks.

19.     During the period from 2005 through January 10, 2020, Plaintiff was never instructed to return to his skilled trades Carpenter position on a full time basis.

20.     During the period from 2005 through January 10, 2020, Plaintiff performed all reasonable work assignments that were assigned and/or offered to him.

21.     Plaintiff's work environment at FORD's Rouge Site, both as an office-based employee and as a skilled trades Carpenter working outside of the office, was saturated with racial overtones and/or implicit bias, including by way of example and without limitation:

      a.  frequent use of the "N word" by co-workers without interference or correction by management;

      b.  racially derogatory writings on bathroom walls and elsewhere that were left without remediation for extended periods;

      c.  supervisors and other management referring to African American workers by impersonal and disrespectful labels such as "hey you" or worse, while white workers are called by their proper names;

      d.  routine denial of reasonable requests for tools and supplies by African

American trades personnel while similar requests are routinely

fulfilled for white trades personnel.

22.     The pervasiveness of these overtones and biases made complaining

about them seem fruitless.

23.     In October 2019, Defendant BOGEMA became the manager of the

group within which Plaintiff's office-based position existed.

24.     Thereafter, Plaintiff experienced discriminatory treatment from

Defendant BOGEMA, including not being treated the same way as other, white

employees within the office setting with respect to greetings, managerial support,

and job assignments, among other things.

25.     In December 2019, Plaintiff worked a substantial number of hours out

of the office in his skilled trades Carpenter position.

26.     On January 10, 2020, Defendant BOGEMA allegedly selected

Plaintiff's position to be 'eliminated'.

27.     Plaintiff's office position was the only position within Plaintiff's work

group, which consisted of approximately 15 employees, that was eliminated at that

time.

28.     Plaintiff's position was selected for elimination by Defendant

BOGEMA and/or other FORD management personnel on account of Plaintiff

having previously filed a worker's compensation claim, on account of Plaintiff

having or being regarded as having a disability, and/or on account of Plaintiff's race.

29.     Defendant BOGEMA and/or FORD wrongfully placed Plaintiff on "No Work Available" status claiming that Plaintiff could not perform the essential functions of any jobs within his job classifications, even though Plaintiff had been routinely performing jobs within his job classifications for 15 years.

30.     Plaintiff was wrongfully placed on "No Work Available" status by Defendant BOGEMA and/or other FORD management personnel on account of Plaintiff having previously filed a worker's compensation claim, on account of Plaintiff having or being regarded as having a disability, and/or on account of Plaintiff's race.

31.     On information and belief, white employees placed on "No Work Available" status on account of not being able to perform the essential functions of any jobs within their job classifications are routinely offered "medical retirements" which include, *inter* alia, the acceleration of the availability of certain retirement benefits.

32.     Despite having 27 years of seniority with FORD, Plaintiff was not offered a "medical retirement" by Defendant BOGEMA and/or other FORD management personnel on account of Plaintiff having previously filed a worker's compensation claim, on account of Plaintiff having or being regarded as having a

disability, and/or on account of Plaintiff's race.

33.     Defendant BOGEMA and/or other FORD management personnel wrongfully regarded Plaintiff as being disabled and/or wrongfully withdrew and/or failed to otherwise provide reasonable accommodations for Plaintiff's actual or perceived disability.

34.     As of January 11, 2020, Defendant BOGEMA and/or other FORD management personnel, put Plaintiff on Worker's Compensation where he was not allowed to work and was paid approximately 50% of what he had been earning while working full-time over the preceding 15 years.

35.     Given that his work, and being a top earner for his family, were central to Plaintiff's identity, being without work and with substantial loss of income, Plaintiff began to suffer mentally.

36.     Plaintiff also suffered mentally from the reality that despite his 27 year career with FORD, racial discrimination was alive and well at FORD, and that discrimination could and did result in his position being wrongly selected for elimination.

37.     Shortly after being displaced in January 2020, Plaintiff began treating for depression, anxiety, and other psychological injuries with a mental health care provider.

38.     In June 2020, Plaintiff filed a Charge of Discrimination with the Equal

Employment Opportunity Commission (EEOC) stating that the wrongful treatment that Plaintiff was encountering was on account of discrimination based upon his race in violation of Title VII of the Civil Rights Act of 1964 as amended, and on account of disability discrimination and failure to accommodate in violation of the Americans With Disabilities Act.

39.    Over the 14 months from January 11, 2020 through May 21, 2021, Defendant BOGEMA and/or other FORD management personnel continued to discriminate against Plaintiff on account of his race by failing to return him to work either as a full time skilled trades Carpenter, or in another position that provided reasonable accommodations, and by ultimately terminating his employment on May 21, 2021.

40.    Over the 14 months from January 11, 2020 through May 21, 2021, Defendant BOGEMA and/or other FORD management personnel continued to discriminate against Plaintiff on account of his actual or perceived disability by failing to return him to work either as a full time skilled trades Carpenter, or in another position that provided reasonable accommodations, and by ultimately terminating his employment on May 21, 2021.

41.    On July 30, 2021, Plaintiff filed a second Charge of Discrimination on account of the continued racial and disability discriminatory conduct, and now retaliatory conduct of Defendant BOGEMA and/or other FORD management

personnel for having filed the initial EEOC Charge, including without limitation

Plaintiff's termination without any effort of accommodation for Plaintiff's

psychological injuries that Defendant BOGEMA and/or other FORD management

personnel caused, nor any consideration of a medical retirement.

42.     The wrongful conduct to which Plaintiff has been subjected has

severely damaged Plaintiff's professional career, as well as having caused

significant non-economic damages.

43.     On or about August 5, 2021, the EEOC issued an order closing its file

and advising Plaintiff of his rights to bring suit directly against FORD.

44.     Plaintiff has timely filed this Complaint alleging, *inter alia*, violation

of the

## COUNT I
## VIOLATION OF THE CIVIL RIGHTS ACT:
## RACE DISCRIMINATION AND RETALIATION

45.     Plaintiff incorporates by reference all facts and allegations elsewhere

set forth in this Complaint.

46.     At all times relevant hereto Plaintiff was qualified for protection

against racial discrimination under Title VII, the Civil Rights Act of 1964, as

amended, hereinafter referred to as the "CRA".

47.     Pursuant to the CRA, including without limitation, 42 U.S.C. §2000e,

it shall be unlawful for an employer:

a. to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

b. to limit, segregate, or classify their employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect their status as an employee, because of such individual's race, color, religion, sex, or national origin.

48.    Defendants are employers within the meaning of the CRA.

49.    Defendants wrongfully discriminated against Plaintiff on account of his race and violated the CRA in several particulars, including without limitation:

a.    Selecting Plaintiff's position for elimination while other, white employees within the same department did not have their positions selected for elimination;

b.    Allowing frequent use of the "N word" by co-workers toward Plaintiff and other African Americans within the workplace without interference or correction by management;

c.    Allowing racially derogatory writings on bathroom walls and elsewhere without remediation for extended periods and without other or corrective efforts;

d.    Referring to Plaintiff and other African American workers by impersonal and disrespectful labels such as "hey you" or worse, while

referring to white workers by their proper names;

e.      Routinely denying reasonable requests for tools and supplies by Plaintiff and other African American trades personnel while similar requests were routinely fulfilled for white trades personnel;

f.      Disproportionately low assignments of African Americans to work in office duty positions;

g.      Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his race;

h.      Depriving Plaintiff of appropriate managerial support;

i.      Regarding Plaintiff as being disabled while other, white employees were not so regarded;

j.      Withdrawing reasonable accommodations while reasonable accommodations were not withdrawn from other, white employees;

k.      Failing to provide reasonable accommodations while reasonable accommodations were provided to other, white employees;

l.      Failing to offer medical retirement while medical retirement was offered to other, white employees;

m.      Undermining Plaintiff's efforts to perform his job responsibilities;

n.      Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

o.      Other acts of discrimination and retaliation to be determined through discovery.

50.     Plaintiff complained to FORD management by, *inter alia*, filing a Charge of Discrimination with the EEOC in June 2020.

51.     Rather than appropriately addressing the problem, Plaintiff was subjected to additional discriminatory conduct in retaliation for making such complaints, including additional discrimination on account of race (and/or disability).

52.     Retaliation for exercising one's rights under the CRA is also a violation of the CRA.

53.     As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

a.      Loss of wages and other compensation, both in the past and in the future;

b.      Loss of the value of benefits, both in the past and in the future;

c.      Loss of earning capacity;

d.      Loss of promotional opportunities;

e.      Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

f.      Other injuries and damages that become known through the discovery process.

54.    Plaintiff also seeks equitable relief, including back-pay, front-pay, punitive damages, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated and/or punitive damages, and attorney fees as allowed by law.

## COUNT II
## VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT: RACE DISCRIMINATION AND RETALIATION

55.    Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

56.    At all times relevant hereto Plaintiff was qualified for protection against race discrimination under the Elliot-Larsen Civil Rights Act, hereinafter referred to as the "ELCRA", Michigan Compiled Laws ("MCL") 37.2012, *et seq*.

57. Pursuant to the ELCRA, it is unlawful for an employer to discriminate against an employee with respect to any aspect of employment on account of race.

58. At all times relevant hereto, Defendants were "employers" within the meaning of §201(a) of the ELCRA.

59. Defendants wrongfully discriminated against Plaintiff on account of his race and violated the ELCRA in several particulars, including without limitation:

> a. Selecting Plaintiff's position for elimination while other, white employees within the same department did not have their positions selected for elimination;

> b. Allowing frequent use of the "N word" by co-workers toward Plaintiff and other African Americans within the workplace without interference or correction by management;

> c. Allowing racially derogatory writings on bathroom walls and elsewhere without remediation for extended periods and without other or corrective efforts;

> d. Referring to Plaintiff and other African American workers by impersonal and disrespectful labels such as "hey you" or worse, while referring to white workers by their proper names;

e.      Routinely denying reasonable requests for tools and supplies by
Plaintiff and other African American trades personnel while similar
requests were routinely fulfilled for white trades personnel;

f.      Disproportionately low assignments of African Americans to
work in office duty positions;

g.      Subjecting Plaintiff to harassing or otherwise unlawful
statements regarding his race;

h.      Depriving Plaintiff of appropriate managerial support;

i.      Regarding Plaintiff as being disabled while other, white
employees were not so regarded;

j.      Withdrawing reasonable accommodations while reasonable
accommodations were not withdrawn from other, white employees;

k.      Failing to provide reasonable accommodations while reasonable
accommodations were provided to other, white employees;

l.      Failing to offer medical retirement while medical retirement was
offered to other, white employees;

m.      Undermining Plaintiff's efforts to perform his job
responsibilities;

      n.     Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

      o.     Other acts of discrimination and retaliation to be determined through discovery.

60.    Plaintiff complained to FORD management by, *inter alia*, filing a Charge of Discrimination with the EEOC in June 2020.

61.    Rather than appropriately addressing the problem, Plaintiff was subjected to additional discriminatory conduct in retaliation for making such complaints, including additional discrimination on account of race (and/or disability).

62.    Retaliation for exercising one's rights under the ELCRA is also a violation of the ELCRA.

63.    As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

      a.     Loss of wages and other compensation, both in the past and in the future;

      b.     Loss of the value of benefits, both in the past and in the future;

      c.     Loss of earning capacity;

d.      Loss of promotional opportunities;

e.      Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

f.      Other injuries and damages that become known through the discovery process.

64.    Plaintiff also seeks equitable relief, including back-pay, front-pay, and other equitable relief the Court deems appropriate.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated and/or exemplary damages, and attorney fees as allowed by law.

## COUNT III
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT:
## DISCRIMINATION AND RETALIATION

65.    Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

66.    At all relevant times, Plaintiff was an individual with disability, as that term is used in the Americans With Disabilities Act (ADA), 42 USC 12101 et

17

seq., in that he has or had a physical or mental impairment that substantially limits or limited one or more major life activities, has a record of such impairment, or was regarded as having such impairment.

67.    Plaintiff is qualified to be a skilled trades Carpenter, as he is an individual who can perform the essential functions of his job as a skilled trades Carpenter, with or without reasonable accommodation.

68.    The ADA makes it unlawful to discriminate against a qualified individual in the terms and conditions of employment on the basis of disability.

69.    Defendant discriminated and retaliated against Plaintiff because of his disability, and violated the ADA in several particulars, including without limitation:

> a.    Selecting Plaintiff's position for elimination while other, non-disabled employees within the same department did not have their positions selected for elimination;
>
> b.    Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his disability;
>
> c.    Depriving Plaintiff of appropriate managerial support;
>
> d.    Wrongfully regarding Plaintiff as being disabled during a period he was not disabled;

e.  Wrongfully withdrawing reasonable accommodations when reasonable accommodations were required;

f.  Failing to provide reasonable accommodations when reasonable accommodations were required;

g.  Failing to offer medical retirement while medical retirement;

h.  Undermining Plaintiff's efforts to perform his job responsibilities;

i.  Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

j.  Other acts of discrimination and retaliation to be determined through discovery.

70.  Defendants conducted themselves with malice or with reckless indifference to Plaintiff's federally protected rights.

71.  Retaliation for exercising one's rights under the ADA is also a violation of the ADA.

72.  As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

a.     Loss of wages and other compensation, both in the past and in the future;

b.     Loss of the value of benefits, both in the past and in the future;

c.     Loss of earning capacity;

d.     Loss of promotional opportunities;

e.     Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

f.     Other injuries and damages that become known through the discovery process.

73.    Plaintiff also seeks equitable relief, including back-pay, front-pay, punitive damages, and other equitable relief the Court deems appropriate.

74.    As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities. In addition, Defendant's failure to make reasonable accommodation to Plaintiff has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and

adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated and/or punitive damages, and attorney fees as allowed by law.

## COUNT IV
## VIOLATION OF PERSONS WITH DISABILITIES CIVIL RIGHTS ACT: DISCRIMINATION AND RETALIATION

75.     Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

76.     At all relevant times, Plaintiff was an individual with disability, as that term is used in the Persons With Disabilities Civil Rights Act (PDCRA), MCL 37.1201 et seq., in that he has or had a physical or mental impairment that substantially limits or limited one or more major life activities, has a record of such impairment, or was regarded as having such impairment.

77.     Plaintiff is qualified to be a skilled trades Carpenter, as he is an individual who can perform the essential functions of his job as a skilled trades Carpenter, with or without reasonable accommodation.

78.     The PDCRA makes it unlawful to discriminate against a qualified individual in the terms and conditions of employment on the basis of disability.

79.     Defendant discriminated and retaliated against Plaintiff because of his disability, and violated the PDCRA in several particulars, including without limitation:

a.      Selecting Plaintiff's position for elimination while other, non-disabled employees within the same department did not have their positions selected for elimination;

b.      Subjecting Plaintiff to harassing or otherwise unlawful statements regarding his disability;

c.      Depriving Plaintiff of appropriate managerial support;

d.      Wrongfully regarding Plaintiff as being disabled during a period he was not disabled;

e.      Wrongfully withdrawing reasonable accommodations when reasonable accommodations were required;

f.      Failing to provide reasonable accommodations when reasonable accommodations were required;

g.      Failing to offer medical retirement while medical retirement;

h.      Undermining Plaintiff's efforts to perform his job responsibilities;

      i.     Depriving Plaintiff of opportunities for job assignments outside of the influence of those personnel engaged in discriminating against him;

      j.     Other acts of discrimination and retaliation to be determined through discovery.

80.    Defendants conducted themselves with malice or with reckless indifference to Plaintiff's federally protected rights.

81.    Retaliation for exercising one's rights under the PDCRA is also a violation of the PDCRA.

82.    As a result of Defendants' discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered substantial economic and non-economic injuries and damages, past and future, including, but not limited to:

      a.     Loss of wages and other compensation, both in the past and in the future;

      b.     Loss of the value of benefits, both in the past and in the future;

      c.     Loss of earning capacity;

      d.     Loss of promotional opportunities;

e.      Non-economic damages including without limitation damages for mental anguish, anxiety, stress, humiliation, embarrassment, and damage to reputation.

f.      Other injuries and damages that become known through the discovery process.

83.     Plaintiff also seeks equitable relief, including back-pay, front-pay, exemplary damages, and other equitable relief the Court deems appropriate.

84.     As a direct and proximate result of Defendant's discrimination on the basis of disability, Plaintiff has suffered lost wages, benefits, and loss of employment opportunities. In addition, Defendant's failure to make reasonable accommodation to Plaintiff has caused or continues to cause Plaintiff to suffer substantial damages for pecuniary losses, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated and/or exemplary damages, and attorney fees as allowed by law.

## COUNT V
## VIOLATION OF THE
## BULLARD-PLAWECKI EMPLOYEE RIGHT TO KNOW ACT

85.    Plaintiff incorporates by reference all facts and allegations elsewhere set forth in this Complaint.

86.    Plaintiff made a written request for all copies of his employee files pursuant to the Bullard-Plawecki Employee Right to Know Act ("BPERKA"), MCL 423.581.

87.    Pursuant to § 423.581 of BPERKA, an employee has a right to review, copy and respond to any personnel record maintained by their employer.

88.    To date, Defendant has willfully failed and/or refused to provide Plaintiff with a full and complete copy of his employee file, including without limitation, the records pertaining to Plaintiff's actual and or perceived disability, and efforts at reasonably accommodating Plaintiff's actual or perceived disability, as well as the notices regarding the termination of Plaintiff's employment.

89.    BPERKA provides for damages for violations of the act, including an award of actual damages and attorney fees.

WHEREFORE, Plaintiff prays for judgment against Defendant FORD in whatever amount the Court or jury determines to be fair, just, and adequate compensation for the injuries and damages sustained, together with interest, costs, liquidated and/or exemplary damages, and attorney fees as allowed by law.

## <u>JURY DEMAND</u>

Plaintiff requests a jury trial in the above entitled cause.

Respectfully submitted,

DILLON & DILLON, P.L.C.

BY: <u>/s/ Paul J. Dillon</u>
Paul J. Dillon (P46913)
Attorney for Plaintiff
9429 S. Main Street
Plymouth, MI 48170
(734) 455-9000
November 2, 2021          <u>pjdillon@ddplc.net</u>